IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT KNOXVILLE
Assigned on Briefs May 18, 2016

## RONNIE MILLS v. STATE OF TENNESSEE

**Appeal from the Criminal Court for Knox County**
**No. 95923      Steven W. Sword, Judge**

_____

**No. E2015-01066-CCA-R3-PC – Filed July 6, 2016**

_____

The Petitioner, Ronnie Mills, appeals as of right from the Knox County Criminal Court's denial of his petition for post-conviction relief. On appeal, he contends that his pleas were unknowing and involuntary due to counsel's misinforming him regarding the specific terms of his plea agreement with the State and counsel's subsequent failure to get those terms in writing or object when the alleged agreement was not honored. Following our review, we affirm the judgment of the post-conviction court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court Affirmed**

D. KELLY THOMAS, JR., J., delivered the opinion of the court, in which THOMAS T. WOODALL, P.J., and JAMES CURWOOD WITT, JR., J., joined.

J. Liddell Kirk (on appeal) and Bruce A. Alldredge (at hearing), Knoxville, Tennessee, for the appellant, Ronnie Mills.

Herbert H. Slatery III, Attorney General and Reporter; Sophia S. Lee, Senior Counsel; Charme P. Allen, District Attorney General; and Phillip H. Morton, Assistant District Attorney General, for the appellee, State of Tennessee.

**OPINION**

FACTUAL BACKGROUND

On April 16, 2012, the Petitioner pled guilty to possession with intent to sell .5 grams or more of a schedule II controlled substance, a Class B felony; possession with intent to sell a schedule III controlled substance, a Class D felony; simple possession, a Class A misdemeanor; and possession of drug paraphernalia, a Class A misdemeanor. At

the guilty plea submission hearing, the State provided the following factual basis underlying the offenses:

> [O]n March 17th of 2010, a little after midnight, [the Petitioner] was operating a motor vehicle that was stopped for running a stop sign at Kelle and Hollywood, and also had a brake light out during that process. He . . . thereafter gave consent to search his . . . vehicle.
>
> During the search, the officer[] with the Knoxville Police Department, Randall Smith, discovered a loaded .45 single-shot pistol under the driver's seat, and also a baggie containing 15.5 grams of cocaine. In the back seat, they also found some plastic baggies, needles, and scales, and also found 293 pills.
>
> All these items--drug items were sent to the lab, and the lab confirmed the presence of cocaine in the amount of 13.3 grams; methylphenidate, 20 tablets; dihydrocodeinone, 36 tables; oxycodone, 60 tablets; and morphine, 12 tablets. All these--or these items were packaged in a manner consistent with resale.

The State informed the court that it had "no specific agreement" with the Petitioner.

The trial court engaged the Petitioner in a plea colloquoy, explaining that he was pleading guilty and detailing the rights he was waiving by entering guilty pleas. The Petitioner said that he understood the prosecutor's statement about the plea agreement. He acknowledged that he was pleading guilty to four offenses and that he understood the potential range of punishment for each offense. The Petitioner affirmed that he understood that the court would be determining his sentence.

The trial court asked the Petitioner whether he understood that "by pleading guilty, [it was] up to [the court] to determine whether or not [he was] appropriate for probation or [would] have to serve all or a portion of these sentences in jail, and what the length of [his] sentence w[ould] be." The Petitioner said that he understood.

The Petitioner agreed that he and his attorney had discussed a document entitled "Waiver of a Trial by Jury and Request for Acceptance Plea of Guilty" and that he had understood and signed the document. The Petitioner said that he did not have any questions about the entry of guilty pleas or his waiver of rights. He confirmed that he was satisfied with his counsel's representation.

The trial court delayed acceptance of the pleas until the sentencing hearing, which was scheduled for May 25, 2012. A transcript of that hearing was not included in the

appellate record. It appears that during the sentencing hearing, the Petitioner left court and did not make another appearance in court until over six months later. The judgments were ultimately entered on April 18, 2013. The Petitioner received a total effective sentence of thirteen years to be served at thirty-five percent.

On April 15, 2014, the Petitioner filed a "Motion for Withdrawal of Guilty Plea for Breach of Contract," which the court construed as a petition for post-conviction relief. Counsel was appointed, and an amended petition was filed. The amended petition alleged that the Petitioner was entitled to relief based on claims that his counsel was ineffective and that his guilty pleas were unknowingly and involuntarily entered. Specifically, the Petitioner alleged that counsel failed to properly investigate and prepare a defense. The Petitioner further asserted that his lack of confidence in his attorney's performance "compelled" him to enter guilty pleas. Additionally, he claimed that counsel failed to properly advise him with regard to the sentence he would receive, including the likelihood that he would be placed on probation. Finally, the Petitioner alleged that "the prosecutor and trial court breached the plea agreement by recommending and sentencing . . . the Petitioner to [thirteen] years['] imprisonment rather than placing him on [eight] years['] probation, as was agreed to in the plea agreement."

At the March 13, 2015 evidentiary hearing, the Petitioner testified that he never intended to proceed to trial and that counsel was retained for the purpose of negotiating a plea agreement. He said that his understanding of the agreement was that his "sentence would be between eight and [ten] at [thirty] percent, eight years['] probation if [he] cooperated and done [sic] what they asked [him]." According to the Petitioner, he cooperated fully with the State, explaining that he "went and talked to [the State] and everything else, but . . . didn't have enough time to actually get anything worked out." He said that thirty days elapsed between the date he entered his guilty pleas and his sentencing hearing. The Petitioner testified that he thought the sentencing hearing was going to be continued so that he would have an opportunity to work with "them,"[1] but the prosecutor did not agree to a continuance.

The Petitioner said that he met with counsel three or four times at counsel's office and that each meeting lasted from ten to twenty minutes. He said that counsel advised him that he was going to be classified as a Range I offender and was facing "no more than [ten years] . . . at [thirty] percent," and that if he "cooperated, [the prosecutor] would

---

[1] Although the Petitioner testified that he provided "them the information, phone numbers," and addresses and did "everything that was asked of [him]," the exact nature of his purported agreement to "cooperate" with police and prosecutors is unclear from the record.

go below that, would give [him] the eight years['] probation." He opined that counsel did not adequately advise him regarding the potential penalties and exposure he was facing.

The Petitioner testified that counsel was not sufficiently prepared for the sentencing hearing because counsel "stated to [him] that he had a deal worked out," but from what the Petitioner now understood, he did not. However, the Petitioner later said that he blamed the prosecutor for the "breach" of the plea agreement.

The Petitioner said that "even though it was an oral plea agreement, [counsel] didn't . . . object or do anything at sentencing." The Petitioner agreed that the written plea agreement did not contain any of the terms that he was now claiming were promised and that there was no recommendation for sentencing. Nevertheless, the Petitioner insisted that he relied upon verbal assurances from the prosecutor. He said that he entered into the plea agreement as written because counsel told him that it was in his best interest to do so and that counsel assured him that the prosecutor would honor the purported verbal agreement.

On cross-examination, the Petitioner admitted that he had been through the criminal justice system many times in the past and that he had ten previous convictions, all of which he had pled guilty to.[2] He further agreed that he knew what was "involved in pleading guilty to a crime[.]"

The Petitioner said that his understanding of the plea agreement was that he faced a maximum of ten years' incarceration if he did not cooperate, but that if he did cooperate with the authorities, then he would receive an eight-year probated sentence. The Petitioner admitted that the transcript from the guilty plea hearing was devoid of any mention of these terms and that the prosecutor stated, explicitly, that there was no specific agreement in place. He further acknowledged that the judge told him he was entering a "blind plea" and that the judge would determine the length and manner of sentence.

According to the Petitioner, he was "very upset" on the date of his 2012 sentencing hearing when he realized he would not receive an eight-year probated sentence. The Petitioner said that during a recess in the sentencing hearing, he went to the bathroom where he had a panic attack. The Petitioner left the courthouse and "went straight to the emergency room." The Petitioner's wife attempted to call counsel and tell him about the Petitioner's medical condition, but she was unable to reach him. The Petitioner acknowledged that he did not return to court for another six to eight months.

---

[2] He later clarified that some of the guilty pleas had been entered at the same time, but he nonetheless admitted being familiar with the plea process.

He said that he was in touch with counsel during this time, and counsel told him that he was "trying to get it worked out."

The Petitioner was the only witness at the evidentiary hearing; counsel was deceased at the time of the hearing.

On April 28, 2015, the post-conviction court entered a detailed order denying relief. The court found that the record supported that the Petitioner entered into a "pure blind plea," with sentencing to be at the court's discretion. The court noted that "procedural safeguards" were followed before the Petitioner's pleas were accepted. The court pointed out that the prosecutor specifically stated at the guilty plea submission hearing that there was no specific agreement with regard to sentencing.

The court acknowledged that counsel could not refute the Petitioner's allegations but emphasized that the burden was on the Petitioner to prove his allegations of fact. The court concluded that the Petitioner failed to meet that burden. Despite concluding that counsel's performance was not deficient, the court examined the prejudice prong, again concluding that the Petitioner failed to prove prejudice. The court noted that the Petitioner "clearly wanted a plea agreement, not to go to trial."

With respect to the Petitioner's claim that his pleas were unknowing and involuntary, the court found that during the plea colloquoy "the Petitioner affirmatively stated at least four times that he was pleading voluntarily, that no one forced him to do so, and that he understood the implications of his pleading guilty."

The court explicitly discredited the Petitioner's claim that he had an "unwritten agreement" with the State. The court found that the evidence indicated that the State informed the Petitioner that his cooperation with the police might assist him during sentencing but that no guarantees were made. According to the court, there was no evidence, other than the Petitioner's own contention, that an unwritten plea agreement existed. Accordingly, the Petitioner also could not prove that the State breached the plea agreement.

It is from this decision that the Petitioner now appeals.

ANALYSIS

On appeal, the Petitioner contends that trial counsel was ineffective by misinforming him about the terms of his plea agreement with the State and by failing to ensure that the State honored that plea agreement. The Petitioner further contends that counsel's ineffective assistance in this respect rendered his guilty pleas unknowing and involuntary. The State responds that the Petitioner is not entitled to post-conviction relief

-5-

because he failed to present clear and convincing evidence that a plea agreement encompassing a sentencing recommendation existed or that counsel misinformed him regarding that agreement.

In a post-conviction proceeding, the burden is on the petitioner to prove the factual basis of his grounds for relief by clear and convincing evidence. Tenn. Code Ann. § 40-30-110(f); see Dellinger v. State, 279 S.W.3d 282, 293-94 (Tenn. 2009). On appeal, we are bound by the trial court's findings of fact unless we conclude that the evidence in the record preponderates against those findings. Fields v. State, 40 S.W.3d 450, 456 (Tenn. 2001). Additionally, "questions concerning the credibility of the witnesses, the weight and value to be given their testimony, and the factual issues raised by the evidence are to be resolved" by the post-conviction court. Id. Because they relate to mixed questions of law and fact, we review the trial court's conclusions as to whether counsel's performance was deficient and whether that deficiency was prejudicial under a de novo standard with no presumption of correctness. Id. at 457.

Under the Sixth Amendment to the United States Constitution, when a claim of ineffective assistance of counsel is made, the burden is on the petitioner to show (1) that counsel's performance was deficient and (2) that the deficiency was prejudicial. Strickland v. Washington, 466 U.S. 668, 687 (1984); see Lockhart v. Fretwell, 506 U.S. 364, 368-72 (1993). In other words, a showing that counsel's performance falls below a reasonable standard is not enough; rather, the petitioner must also show that but for the substandard performance, "the result of the proceeding would have been different." Strickland, 466 U.S. at 694. The Strickland standard has been applied to the right to counsel under article I, section 9 of the Tennessee Constitution. State v. Melson, 772 S.W.2d 417, 419 n.2 (Tenn. 1989).

In the context of a guilty plea, the effective assistance of counsel is relevant only to the extent that it affects the voluntariness of the plea. Therefore, to satisfy the second prong of Strickland, the petitioner must show that "there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." Hill v. Lockhart, 474 U.S. 52, 59 (1985); see also Walton v. State, 966 S.W.2d 54, 55 (Tenn. Crim. App. 1997).

When analyzing the voluntariness of a guilty plea, we look to the federal standard announced in Boykin v. Alabama, 395 U.S. 238 (1969), and the state standard set forth in State v. Mackey, 553 S.W.2d 337 (Tenn. 1977). State v. Pettus, 986 S.W.2d 540, 542 (Tenn. 1999). In Boykin, the United States Supreme Court held that there must be an affirmative showing in the trial court that a guilty plea was voluntarily and knowingly given before it can be accepted. 395 U.S. at 242. Similarly, in Mackey the Tennessee Supreme Court required an affirmative showing of a voluntary and knowledgeable guilty plea, namely, that the defendant has been made aware of the significant consequences of

such a plea. Pettus, 986 S.W.2d at 542. A plea is not "voluntary" if it results from ignorance, misunderstanding, coercion, inducements, or threats. Blankenship v. State, 858 S.W.2d 897, 904 (Tenn. 1993). The trial court must determine if the guilty plea is "knowing" by questioning the defendant to make sure he or she fully understands the plea and its consequences. Pettus, 986 S.W.2d at 542; Blankenship, 858 S.W.2d at 904.

Because the plea must represent a voluntary and intelligent choice among the alternatives available to the defendant, the trial court may look at a number of circumstantial factors in making this determination. Blankenship, 858 S.W.2d at 904. These factors include: (1) the defendant's relative intelligence; (2) his familiarity with criminal proceedings; (3) whether he was represented by competent counsel and had the opportunity to confer with counsel about alternatives; (4) the advice of counsel and the court about the charges against him and the penalty to be imposed; and (5) the defendant's reasons for pleading guilty, including the desire to avoid a greater penalty in a jury trial. Id. at 904-05.

Following our review, we conclude that the record supports the post-conviction court's conclusion that the Petitioner knowingly and voluntarily entered into open guilty pleas, with sentencing left to the discretion of the trial court. Indeed, there is nothing in the record, save the Petitioner's bare assertions, that the State verbally promised the Petitioner a fully-probated eight-year sentence in exchange for his "cooperation" with police and prosecutors. The post-conviction court explicitly discredited that Petitioner's claim that such an agreement existed. Additionally, the Petitioner has provided no substantial proof that counsel assured him that such a deal existed. The written plea agreement signed by the Petitioner contains notations next to each count stating that the "sentence [was] to be determined." Also, the Petitioner testified that he never intended to proceed to trial and that he hired counsel with the explicit purpose of entering into a plea agreement.

The transcript of the guilty plea submission hearing reveals that the State announced in open court that there was "no specific agreement" in place. Likewise, the trial court informed the Petitioner that sentencing, including the length and manner of service, would be determined solely by the trial court following a sentencing hearing, and the Petitioner indicated his understanding. He also averred that he was satisfied with counsel's representation. The Petitioner was familiar with the plea process, having entered guilty pleas on more than one occasion in the past.

In sum, there is simply nothing in the record to support the Petitioner's assertions that a plea agreement with sentencing recommendations existed or that counsel misinformed the Petitioner about that alleged agreement. Accordingly, we conclude that the pleas were entered voluntarily and knowingly and that the Petitioner is not entitled to relief.

## CONCLUSION

Based on the foregoing and the record as a whole, the judgment of the post-conviction court is affirmed.

_____

D. KELLY THOMAS, JR., JUDGE